UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal No. 09-43-ART |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION &** |
| TONY TAYLOR, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The defendant's motion to dismiss a count of the indictment because law enforcement neglected to preserve potentially exculpatory evidence, R. 59, is denied. The record does not demonstrate that the police acted in bad faith either by failing to preserve all of the evidence or by incorrectly reporting that the evidence was destroyed without testing.

## BACKGROUND

On May 5, 2009, law enforcement executed a search of the defendant's property relating to a stolen four-wheeler. R. 83 at 25. During that search, the police encountered what they believed to have been the components of a meth lab in a shed on the property. *Id.* at 28, 32. In particular, they found what one officer describes as a "generator"—a "Mountain Dew bottle, filled with a semi-solid substance and a tubing coming from the top." *Id.* at 28. Also in the shed, they observed (among other things) a bottle of Liquid Fire, some paper towels, coffee filters, Morton salt, and a container holding either Coleman fuel or ether. *Id.* at 28-32. Law

enforcement discovered additional evidence of a meth lab elsewhere on the property. *See, e.g.,* *id.* at 43. A grand jury returned an indictment against the defendant on June 25, 2009. R. 1. The first count alleges that he "did knowingly and intentionally attempt to manufacture a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1), all in violation of 21 U.S.C. § 846." *Id.*

At a hearing in June 2009, Officer Christopher Curry testified that the generator and other evidence found in the shed had been taken to a blowout shelter in London, Kentucky, to be destroyed without any testing. R. 83 at 77-80. Following the hearing, the defendant filed a motion to dismiss the first count of the indictment on the theory that the failure to preserve the evidence for testing deprived him of due process. R. 59. The government contacted law enforcement to confirm the evidence's destruction and discovered that the generator had, in fact, been preserved after all. R. 64. At a hearing on this and another motion on May 20, 2010, Officer Curry testified that the generator was preserved and a portion of the tubing tested negative for methamphetamine. R. 83 at 55. The remaining items were left at the scene. *Id.* at 56. Officer Curry explained that law enforcement typically does destroy methamphetamine lab components as a matter of policy, and at the previous hearing he incorrectly believed the police had done so in this case. *Id.* at 73-74.

Despite this revelation, the defendant continues to pursue his motion to dismiss the first count of the indictment. He argues that "[l]eaving these items thus exposed for one year [at the scene] while misleading defense counsel is the functional equivalent to destruction of those items by law enforcement." R. 93 at 2. Depriving the defendant of the opportunity to test the items left

at his home, the defendant argues, violates the due process clause. *Id.*

## ANALYSIS

To establish that law enforcement violated the due process clause by failing to preserve "potentially exculpatory" evidence, the defendant must demonstrate that the police acted in bad faith. *United States v. Farmer*, 289 F. App'x 81, 86 (6th Cir. 2008). Evidence is "potentially exculpatory" where, as here, "no more can be said than that it could have been subjected to tests, the results of which might [] exonerate[] the defendant." *United States v. Wright*, 260 F.3d 568, 571 (6th Cir. 2001) (quoting *Arizona v. Youngblood*, 448 U.S. 51, 57 (1988)); *see also* R. 93 at 2-3 ("The fact that this single item of evidence, thought by the government to be an 'HCL generator,' tested negative for methamphetamine makes it more likely that the other items compromising the alleged methamphetamine lab would also test negative had they been preserved and made available for testing.").

The record does not show that the investigators acted in bad faith. "Bad faith" requires that law enforcement exhibit "official animus" or undertake a "conscious effort to suppress exculpatory evidence." *United States v. Jobson*, 102 F.3d 214, 218 (6th Cir. 1996) (citations and internal quotation marks omitted). Here, nothing indicates that law enforcement consciously sought to conceal this evidence. The investigators actually did preserve and test one item, the generator, and simply did nothing with the rest—despite their usual practice of destroying the contents of meth labs. Nor does the fact that law enforcement led the defendant to believe

evidence was destroyed[1] reflect animus or a conscious effort to suppress exculpatory evidence. Officer Curry's explanation for the misrepresentation—that he did believe the evidence was destroyed pursuant to standard practice—is sensible. Law enforcement agencies do destroy[2] the contents of meth labs for the purpose of safety. *See, e.g.*, *United States v. Beckstead*, 500 F.3d 1154, 1161 (10th Cir. 2007) ("Officers . . . testified that they removed and destroyed the lab and its chemicals in this case pursuant to the police department's standard policy. This policy is based upon the significant dangers that such a lab and the chemicals associated with it present.").

At worst, the defendant has demonstrated that law enforcement was negligent in its preservation of evidence. But negligence, even gross negligence, is not bad faith. *Jobson*, 102 F.3d at 218. Whatever lapse the government suffered here is no more substantial than its oversight in *Farmer*, where the government failed to preserve evidence despite a court order requiring preservation. 289 F. App'x at 85-86. There, too, the court held that the government was, at worst, "grossly negligent." *Id.* at 86.[3]

---

[1]      The defendant neglects to say, however, whether the evidence is irretrievable at this stage.

[2]      Notably, as the defendant acknowledges, several courts have held that destruction of meth lab evidence pursuant to standard department policy is consistent with due process. *See, e.g.*, *Beckstead*, 500 F.3d at 1161; *United States v. Varner*, 261 F. App'x 510, 517 (4th Cir. 2008); *United States v. Heffington*, 952 F.2d 275, 281 (9th Cir. 1991).

[3]      In the first iteration of this motion to dismiss, the defendant urged the Court to hold that "in cases where law enforcement has *intentionally destroyed* evidence of a methamphetamine lab prior to examination and testing of that evidence, a due process violation has occurred" because it is well known that defendants may want to examine such evidence. R. 59 at 4-5 (emphasis added). Since there is no longer any indication that law enforcement intentionally destroyed the evidence, this argument is now moot. Even if the argument remained, however, it would be unconvincing. The defendant cites no authority to support his view. And to say that law

It may be true that the "bad faith" rule has undesirable consequences for defendants like the defendant in this case. But it is the product of careful balancing by the Supreme Court. As the Supreme Court explained, "[w]henever potentially exculpatory evidence is permanently lost, courts face the treacherous task of divining the import of materials whose contents are unknown and, very often, disputed." *Youngblood*, 488 U.S. at 57-58 (quoting *California v. Trombetta*, 467 U.S. 479, 486 (1984)). "[R]equiring a defendant to show bad faith on the part of the police both limits the extent of the police's obligation to preserve evidence to a reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it[.]" *Id.* at 58.

Of course, it seems sensible that law enforcement should preserve any evidence that they think the defendant may want to inspect. To say the Constitution mandates such a practice, however, would be an overstatement. It does not. Best practices and constitutional mandates do not always coincide.

---

enforcement acts in bad faith whenever it fails to preserve potentially exculpatory evidence—that is, whenever the evidence "could have been subjected to tests, the results of which might [] exonerate[] the defendant," *Wright*, 260 F.3d at 571—would simply read the "bad faith" requirement out of the rule. Finally, the proposition that law enforcement acts in bad faith by failing to preserve evidence that obviously should be tested cannot be squared with *Youngblood*, 488 U.S. at 57. There, the Supreme Court found that the government did not act in bad faith by failing to adequately preserve semen samples taken in connection with the rape of a young boy. *Id.* at 58. The Court observed that "the police do not have a constitutional duty to perform any particular test." *Id.* at 59.

## CONCLUSION

For the foregoing reasons, the motion to dismiss the first count of the indictment, R. 59, is **DENIED**.

This is the 23rd day of July, 2010.

Signed By:

*Amul R. Thapar* AT

United States District Judge