UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | No. 6:09-CR-43-ART |
| v. | ) | RECOMMENDED DISPOSITION |
| TONY TAYLOR, | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

The Court considers Tony Taylor's motion to suppress. *See* DE #56 (Motion). Specifically, Defendant argues that the search warrant at issue, in part, lacked probable cause and was not sufficiently particular, thereby requiring suppression of all evidence seized pursuant to the warrant. *See id.* at 2-3. As an alternative argument, Taylor asserts that the officers' search exceeded the permissible scope of the warrant, thereby devolving into a forbidden general search. *See* DE #69 (Reply). The United States responded in opposition, *see* DE #63, and the Court held an evidentiary hearing. *See* DE #81 (Minute Entry Order).

Having evaluated the warrant application, the parties' briefs, and the hearing testimony, the Court **RECOMMENDS** that the District Court **DENY** Taylor's motion in its entirety.

**I. Background Information**

A. Procedural History

The instant motion is Defendant's third request to suppress. Previously, Taylor asked the Court to suppress evidence seized pursuant to a search warrant because the warrant was unsigned. *See* DE #26. By a separate motion, Defendant sought suppression of statements secured in violation of *Miranda v. Arizona*, 86 S. Ct. 1602 (1966). *See* DE #24. The United States responded in

opposition to each motion, *see* DE ## 36-37, and the Court conducted an evidentiary hearing. *See* DE #43 (Minute Entry); DE #44 (Transcript). After reviewing the evidence and the parties' arguments, the Court recommended that the District Judge grant the motion to suppress Taylor's un-*Mirandized* statements and deny the motion to suppress evidence obtained via search warrant. *See* DE #45 (Recommended Disposition).

Shortly thereafter, Taylor's second CJA counsel (Hon. R. Michael Murphy) moved to withdraw from representation. *See* DE #46. The Court held a hearing and granted counsel's motion. *See* DE #51 (Minute Entry Order). Additionally, the Court appointed new counsel (Hon. Patrick F. Nash) and afforded additional time for Mr. Nash to file any objections to the undersigned's Recommended Disposition. *See id.* The District Judge ultimately adopted the recommendation. *See* DE #55 (Order).

Subsequently, Taylor, through Mr. Nash, filed the instant suppression motion contesting the probable cause finding for the underlying search warrant. *See* DE #56. The United States responded in opposition, *see* DE #63, and denied the need for a hearing. *See* DE #62. Taylor filed a reply brief and did ultimately request an evidentiary hearing. *See* DE #69. After holding a status conference, the Court scheduled an evidentiary hearing encompassing both the suppression motion and a motion to dismiss. *See* DE # 73 (Minute Entry Order). Just prior to the hearing, Taylor filed another brief clarifying his suppression arguments. *See* DE #80.

On May 17, 2010, the Court conducted the evidentiary hearing. *See* DE #81 (Minute Entry Order). During the hearing, the Court received testimony concerning Defendant's argument that the officers exceeded the scope of the warrant and conducted a general search. *See* DE #83 (Transcript)

(hereinafter "Tr."). However, the defense failed to convince the Court that it should look beyond the four corners of the application to evaluate probable cause.

B. Factual Findings

1. *Search Warrant*[1]

On May 5, 2009, Christopher Curry, a deputy with the Clay County Sheriff's Department, obtained a warrant to search Defendant Tony Taylor's property. *See* DE #63-2 (Warrant); Tr. at 26. The affiant based his warrant request on the following information:

> ON 05-05-2009 AT APPROX. 2032 HRS. I RECEIVED INFORMATION FROM RALEIGH BENGE, A DEPUTY WITH THE CLAY CO. SHERIFF OFFICE, THAT HE WAS AT THE ABOVE DESCRIBED RESIDENCE ALONG WITH DONALD WILSON OF THE KENTUCKY STATE POLICE, AND THAT THEY HAD LOCATED A STOLEN 4-WHEELER BEHIND THE RESIDENCE, NEAR AN OUTBUILDING WITH THE SERIAL NUMBER 5Y4AGO1Y73a098146 A 2003 YAMAHA. IT IS ALSO KNOWN THIS AGENCY THAT SEVERAL A.T.V.'S HAVE BEEN STOLEN FROM THE SURROUNDING AREA. DEPUTY BENGE ALSO ADVISED THAT THERE WERE 4-WHEELER TRACKS FROM THE OUTBUILDING LEADING TO THE 4-WHEELER.[2]

*See* DE #63-2 (Warrant) at 2. Curry also averred that he had independently verified, through 911, that Taylor lived on the premises to be searched. *See id.* Having reviewed this information, the circuit judge issued a warrant authorizing the officers to search the residence, including outbuildings, for personal property described as "4-WHEELERS, MOTORCYCLES, PARTS TO

---

[1] During the evidentiary hearing, the parties agreed that the search warrant and affidavit attached as an exhibit to the United States's response is submitted into the record as a true copy of the document subject to the Court's four-corners probable cause analysis. *See* DE #81 (Minute Entry); Tr. at 24. Therefore, the Court will cite to DE #63-2 when referencing the contents of the search warrant and affidavit.

[2] For clarity, the Court retains the original capitalization found in the search warrant and affidavit. *See* DE #63-2 (Warrant).

4-WHEELERS, OR MOTORCYCLES, [and] ANY ITEMS THAT COULD BE USED IN THE THEFT OF ATV'S." *See id.* at 1.

### 2. *Evidentiary Hearing*

During the May 17, 2010, evidentiary hearing, the Court heard testimony from Denny Taylor, Defendant's brother and the sole defense witness. *See* DE #13 (begin Taylor testimony). The Court also heard testimony from two deputies actively involved in the search: Christopher Curry, who discovered evidence of an alleged methamphetamine lab, and Raleigh Benge, who recovered firearms from Taylor's residence. *See* Tr. at 25 (begin Curry testimony); *id.* at 88 (begin Benge testimony). Both officers testified on behalf of the United States.

#### a. Denny Taylor

Denny Taylor's testimony focused on his observations of Defendant's residence in the weeks following the May 5, 2009 search and Defendant's subsequent arrest. *See* Tr. at 15 (indicating that he stopped by Tony Taylor's residence "a couple of weeks" after the search); *id.* at 18 (same). Specifically, the witness recalled observing "a motorcycle frame, and . . . motorcycle parts stuck in . . . a milk crate," along with "a bunch of junk," lying in and around an open-ended shed behind Defendant's residence. *See id.* at 16-17. Additionally, during cross-examination, Denny Taylor confirmed that the shed in question had always been "open on both ends." *See id.* at 20-21; *id.* at 21 (agreeing that "you could stand and look inside it . . . [w]ithout actually going inside").

#### b. Christopher Curry

Christopher Curry, a deputy with the Clay County Sheriff's Department and the search warrant affiant, testified after Denny Taylor. Curry indicated that, on May 5, 2009, he arrived at Defendant's property with a search warrant and assisted in the actual search. *See id.* at 25-26.

4

While searching the open-ended shed, Curry found "a Mountain Dew bottle, filled with a semi-solid substance and a tubing coming from the top." *See id.* at 28; *id.* at 29 (Curry testifying that he saw the generator "from outside the shed"). Curry characterized this contraption as a "generator" used in the manufacture of methamphetamine. *See id.* at 34.

In addition to the alleged "generator," Curry also, in plain view, *see id.* at 34, found fertilizer, *see id.* at 30, a propane tank, *see id.* at 44, "two rolls of paper towels, two phones, a mason jar, the Liquid Fire that was inside the plastic baggie . . ., a box of Morton salt, a box of coffee filters, . . . a Kool-Aid container, . . . some Ziploc baggies and some used coffee filters . . ." *See id.* at 31. Curry testified that these "commonly purchased items" are also "items that are commonly used in the manufacturing of methamphetamine." *See id.* at 32.

In addition to identifying the items located during the May 2009 search, Curry also testified as to the routine procedures utilized by the Clay County Sheriff's Department to disassemble a suspected methamphetamine lab. *See id.* at 35-36; *id.* at 49-50 (characterizing methamphetamine labs as "very hazardous" and "a public safety hazard"). Curry noted that the common household items are routinely photographed and left at the scene. *See id.* at 56; *id.* at 70 ("We – generally, these common household items that doesn't have any chemical mixed with them, we'll photograph and leave at the scene."). Consistent with this procedure, Curry seized the "generator," took photographs of the remaining items, and left those items at Taylor's residence. *See id.* at 72 (noting that Curry only seized the generator); *id.* at 71 ("I never collected those items [i.e., photographed items other than the generator] from the scene.").

5

### c. Raleigh Benge

Raleigh Benge, a deputy with the Clay County Sheriff's Department and one of the two officers who initially located the stolen ATV on Tony Taylor's property, was the final witness to testify at the evidentiary hearing. Deputy Benge's testimony largely focused on the circumstances surrounding his discovery and subsequent seizure of three weapons located in Defendant's residence. *See id.* at 89. According to Benge, he entered Taylor's house with Defendant and Delphia Osborne, a friend of Taylor's, after the other officers arrived with the search warrant. *See id.* at 90. While in the house, Benge "noticed these jars sitting on the table in the kitchen[,] . . . walked over and looked at those jars, and . . . turned around . . . [and] saw a firearm inside of a cabinet." *See id.* at 89; *id.* at 91 (indicating that the firearm located in the cabinet was a .22 caliber revolver). Upon finding that firearm, Benge asked Taylor and Osborne about any other weapons present in the residence. *See id.* at 100. Either or both Taylor and Osborne affirmed the presence of other firearms, and Defendant instructed Osborne to lead Benge to the firearms. *See id.* As a result, Benge recovered two more firearms – a .45 caliber automatic pistol and a 12-gauge shotgun – in the bedroom of Defendant's residence. *See id.* at 92.

In addition to this testimony, Deputy Benge also provided information about the stolen ATV. To that end, Benge testified that he and another officer traveled to Taylor's residence to investigate a complaint about a stolen ATV. *See id.* at 103-104. With Taylor's permission, the two officers "physically saw and inspected the ATV" and only determined that it was stolen after "calling in the VIN number." *See id.* at 103. Benge also testified that, "to the best of [his] knowledge" the ATV was "operational and working." *See id.* at 104; *id.* (Benge: "I think Mr. Taylor said that it did run

6

good enough."). However, Benge admitted that he did not recall anyone specifically turning on the ATV. *See id.*

**II. Analysis**

The instant motion to suppress largely rests on Taylor's argument that, in part,[3] probable cause did not support the warrant. *See* DE #56 (Motion), at 2; DE #69 (Reply), at 3-4 (arguing that the good-faith exception does not apply because the affidavit was bare bones and facially deficient). Relatedly, Defendant also argues that the warrant's authorization to search for "ANY ITEMS THAT COULD BE USED IN THE THEFT OF ATV'S," *see* DE #63-2 (Warrant), at 1, does not meet the Fourth Amendment's particularity requirement. *See* DE # 69 (Reply), at 2-3 (discussing possible and varied methods of ATV theft); *see also* Tr. at 107 (Mr. Nash: "[O]ne can envision several ways to steal an ATV. You can simply hop on and drive it away. You can load it on the back of a truck. You can load it in a trailer. Or, I suppose, you can use tools to hotwire, whatever that means, or you could use keys with it. . . . It could just be the person connected to this residence bought a stolen ATV."). Alternatively, Taylor argues that even if the warrant is valid, the officers conducted a general search by seizing items not listed in the warrant while simultaneously ignoring items listed in the warrant (*i.e.*, motorcycle parts identified by Denny Taylor as remaining on the property following his brother's arrest). *See* DE #69 (Reply), at 5; DE #80 (Prehearing Memorandum), at 5.

A. Probable Cause

The Fourth Amendment mandates that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *See* U.S. CONST., amend. IV. Probable cause consists of

---

[3] The defense concedes probable cause to search for ATVs on the property. *See* Tr. at 105.

"reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *See United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990). To determine probable cause, an issuing magistrate must examine the totality of the circumstances and find "a 'fair probability' that evidence of a crime will be located on the premises of the proposed search." *See United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir. 2005) (en banc) (quoting *United States v. Bowling*, 900 F.2d 926, 930 (6th Cir. 1990)). A supporting affidavit must demonstrate the existence of a "nexus between the place to be searched and the evidence sought." *See United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (quoting *United States v. Van Shutters*, 163 F.3d 331, 336-37 (6th Cir. 1998)). Additionally, the warrant must describe with particularity the items to be seized. *See United States v. Ables*, 167 F.3d 1021, 1033 (6th Cir. 1999).

When evaluating whether a warrant application presented probable cause, a reviewing court must accord "*great deference*" to the issuing magistrate's determination. *See United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006) (emphasis added). Such deference ensures that "an issuing magistrate's discretion [will] only be reversed if it was arbitrarily exercised." *See United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000). The reviewing court will uphold the issuing judge's probable cause determination so long as a "substantial basis" existed for the judge to conclude "that a search would uncover evidence of wrongdoing." *See Illinois v. Gates*, 103 S. Ct. 2317, 2331 (1983); *Allen*, 211 F.3d at 973.

Line-by-line scrutiny of the supporting affidavit is inappropriate. *See Allen*, 211 F.3d at 973. Further, the reviewing court must limit its "substantial basis" review to "information presented in the four corners of the affidavit." *See United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006); *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005). Additionally, when the search at issue

occurred pursuant to a warrant, the defendant "has the burden of making a prima facie case that the search was illegal." *See United States v. Franklin*, 284 F. App'x 266, 275 (6th Cir. 2008) (citing *United States v. Murrie*, 534 F.2d 695, 697-98 (6th Cir. 1976)). Once a defendant makes an initial showing, the burden shifts to the government, which "must prove the legality of the search by a preponderance of the evidence." *See Franklin*, 284 F. App'x at 275.

Here, the affiant (Deputy Curry) submitted the following information: 1) Two officers had located a stolen 4-wheeler behind Taylor's residence; 2) The 4-wheeler was located near an outbuilding on the property; 3) Tracks made by a 4-wheeler led from the outbuilding to the ATV; and 4) The Clay County Sheriff's Department had nonspecific knowledge of several ATV thefts from the surrounding area. *See* DE #63-2 (Warrant) at 2. The affiant also averred that he had confirmed that Taylor lived on the property at issue. *See id.*

The information provided within the four corners of the affidavit establishes probable cause to search the listed property for other ATVs and for items that could be used to steal ATVs.[4] At the time of issuance, the circuit judge knew that Deputy Benge and Officer Wilson had located a stolen ATV at Taylor's confirmed residence. Additionally, the judge knew that ATV tracks led from the outbuilding behind the residence; thus, the judge could reasonably infer that the ATV was in driveable condition and had been driven at the site by the resident. This inference supports authorization to search for, at a minimum, keys to the ATV or tools utilized to make the vehicle run.

---

[4] Probable cause clearly does not exist as to motorcycles and parts of motorcycles or ATVs. The presence of a stolen ATV, without more, does not support an inference that Taylor illegally housed motorcycles or parts of motorcycles on his property. Additionally, Deputy Curry's affidavit does not present any information suggesting that Taylor was disassembling ATVs. In fact, the reference to the ATV tire tracks gives rise to an opposite inference, namely that Taylor was driving the ATV rather than stripping it for parts.

Furthermore, the presence of the stolen ATV along with the generic reference to other ATV thefts in the area provides added support for the decision to authorize a search for instrumentalities of ATV theft on the premises. Even though the affidavit is far from perfect, the totality of the circumstances supports a probable cause finding.

In short, a substantial basis exists to support the issuing judge's decision to authorize the search of Taylor's property. The circuit judge did not act arbitrarily, and the Court properly defers to the initial probable cause determination.

B. Particularity

In a related argument, Taylor urges the Court to find that the warrant was unconstitutionally vague in its description of items used to effectuate ATV theft. This lack of particularity, the defense argues, failed to limit the scope of the executing officers' search because the uncabined description is broad enough to include items as large as a truck or trailer and as small as tools or a key. *See* DE #69 (Reply), at 2-3; Tr. at 107.

The particularity requirement serves to limit the discretion of the executing officers in determining places to be searched and items to be seized. *See United States v. Greene*, 250 F.3d 471, 476-77 (6th Cir. 2001); *United States v. Ables*, 167 F.3d 1021, 1033 (6th Cir. 1999). However, particularity is not a rigid concept; rather "the degree of specificity required is flexible and will vary depending on the crime involved and the types of items sought." *See United States v. Henson*, 848 F.2d 1374, 1383 (6th Cir. 1988). Thus, courts will uphold otherwise generic descriptions or classes of items subject to seizure, based on case-specific circumstances, as long as the warrant sufficiently, in context, limits the officer's search to evidence of a specific illegal activity. *See, e.g., United States v. Dickerson*, 166 F.3d 667, 693-94 (4th Cir. 1999), *rev'd on other grounds*, 120 S. Ct. 2326

10

(2000) (upholding a warrant authorizing seizure of "'Evidence of the crime of bank robbery'"); *but see, e.g., United States v. Holzman*, 871 F.2d 1496 (9th Cir. 1989), *rev'd on other grounds*, 110 S. Ct. 2301 (1990) (invalidating, as over-broad, search for "'any property or devices used or obtained through fraud operations'"); *Voss v. Bergsgaard*, 774 F.2d 402, 405 (10th Cir. 1985) (invalidating, as over-broad, search for evidence of a violation of a federal conspiracy statute)

The defense fairly contests particularity under the facts of this case. Contrary to the United States' assertion that the defense is allowing "the perfect [to get] in the way of the good," *see* Tr. at 102, Defendant poses a legitimate question about the varied size (and therefore expansive scope of search) of items falling within the description of "ANY ITEMS THAT COULD BE USED IN THE THEFT OF ATV'S." *See* DE #63-2 (Warrant), at 1. As defense counsel articulated during oral argument, a person could steal an ATV by "simply hop[ping] on and driv[ing] it away" (as facilitated by use of a key or hot-wiring tools) or by loading the ATV "on the back of a truck . . . [or] in a trailer." *See* Tr. at 107. The application would have benefitted from affiant expertise related to the evidence typically related to a crime of this type or to evidentiary exemplars pertinent to this investigation. However, the Court need not determine that a warrant is "good" or "perfect" in order to uphold its validity; rather, the Court simply must find that the description was "as specific as the circumstances and the nature of the activity under investigation permit." *See Henson*, 848 F.2d at 1383 (quotation omitted). Applying common sense and reason, the Court views the warrant as adequately particular.

Unlike conspiracy or fraud, ATV theft is not a general criminal activity; rather, ATV theft, like bank robbery, is "a specific illegal activity that . . . generates quite distinctive evidence." *See Dickerson*, 166 F.3d at 694. Defense counsel, in argument, easily defined the types of materials one

11

would logically relate to ATV theft. Additionally, nothing in the record demonstrates that the officers knew the means of theft at the time they sought a search warrant. *See Henson*, 848 F.2d at 1383 ("'Where the precise identity of goods cannot by ascertained at the time the warrant is issued, naming only the generic class of items will suffice.'") (citing *United States v. Porter*, 831 F.2d 760, 764 (8th Cir. 1987)). The evidentiary hearing confirmed this. *See* Tr. at 103. Thus, permitting search for items used in ATV theft may be broad, but it is not, in this case, unparticular.

The warrant and attached affidavit, while sparse, reflect what the officers knew at that time. Namely, two officers found a stolen ATV on Tony Taylor's property, observed ATV tracks leading from the outbuilding to the ATV, and had nonspecific knowledge of other ATV thefts in the area. *See* DE #63-2 (Warrant), at 2. From this information, the issuing judge and the officers executing the search warrant could reasonably infer that 1) someone had driven the ATV on Taylor's property, thereby providing a nexus between an alleged crime and the place to be searched, and 2) someone had used either a key or had otherwise managed to make the ATV run. The universe of responsive items reasonably finds a limit in the subject matter of the designated crime, which in this case presents a logical and discernible limit and thus confines officer discretion. *See, e.g., Sanders v. Parrish*, 141 F. App'x 412, 417 (6th Cir. 2005) (referencing materials in the search warrant affidavit to remedy a deficient description of items to be seized).

Affiant opinion, properly supported, would buttress the warrant's propriety. Nonetheless, the Court finds that the specific circumstance and crime under investigation meet the constitutional requirement. *See* 2 Wayne R. LaFave, *Search and Seizure: A Treatise On The Fourth Amendment* § 4.6 (4th ed. 2004) ("Sometimes a warrant will not attempt to describe the instrumentalities except by reference to the criminal conduct in which they have been used. Such descriptions . . . have been

upheld. This is sound, as the nature of the crime is such that these instrumentalities are reasonably subject to identification . . ."). Here, as a matter of common sense, the facts presented define fairly the types of items at issue in the search by reference to a distinct and specific crime. This complies with the Fourth Amendment.

C. Good Faith

Even if the warrant lacked probable cause or sufficient particularity, *Leon* unquestionably would spare the search. Absent probable cause, evidence otherwise subject to suppression may survive the exclusionary rule under the *Leon* good faith exception. In *United States v. Leon*, 104 S. Ct. 3405 (1984), the Supreme Court held that the exclusionary rule does not bar evidence seized in reasonable, good-faith reliance on a search warrant subsequently determined to be invalid. *See Leon*, 104 S. Ct. at 3415; *United States v. Leake*, 998 F.2d 1359, 1366 (6th Cir. 1993). In such cases, application of the exclusionary rule would yield no additional deterrent effect, given that the officer's reliance on the warrant was *objectively* reasonable. *See United States v. Hython*, 443 F.3d 480, 484 (6th Cir. 2006). A reviewing court, therefore, must determine whether the supporting affidavit was "'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *See Leon*, 104 S. Ct. at 3421 (citation omitted); *see also Carpenter*, 360 F.3d at 595 (noting that this standard, by definition, "is a less demanding showing than the 'substantial basis' threshold required to prove the existence of probable cause in the first place."). *Leon* applies to a particularity analysis. *See United States v. Logan*, 250 F.3d 350, 366 (6th Cir. 2001).

Having created the good-faith exception, the Supreme Court enumerated four situations in which the exception would not apply: 1) where the affiant provided false information to the issuing

judge and knew or should have known about the falsity; 2) "where the issuing magistrate wholly abandoned his judicial role"; 3) where the supporting affidavit is devoid of "indicia of probable cause"; and 4) where the warrant is "so facially deficient" that the "executing officers cannot reasonably presume it to be valid." *See Leon*, 104 S. Ct. at 3421 (citations omitted); *see also United States v. Helton*, 314 F.3d 812, 824 (6th Cir. 2003) (reciting the standard).

In his reply brief, Defendant asserts that the underlying affidavit is "bare-bones," and "facially deficient."[5] *See* DE #69 (Reply) at 4. The Court disagrees. As noted previously, Deputy Curry's affidavit contains information about a confirmed stolen ATV present on Taylor's property. Additionally, Curry stated that ATV tracks connected the vehicle to an outbuilding on the property. The affiant also particularly identified and described the places to be searched and, as much as possible, the items to be seized. Thus, the search warrant affidavit adequately connected the places to be searched (*i.e.*, Taylor's residence and outbuildings), with suspected criminal activity (*i.e.*, ATV theft) and the items to be searched for and seized (*i.e.*, other stolen ATVs and instrumentalities facilitating ATV theft). The officers' reliance on a warrant permitting a search for ATVs and theft instrumentalities was objectively reasonable and supported by law. Again, authorities knew only that an operational and stolen ATV was at the Taylor residence, and the particularization made is, in context, adequate. The officers reasonably accepted the warrant as proper.[6]

---

[5] Defendant does not invoke the other two *Leon* exceptions.

[6] The Court must note that police acted cautiously and deliberately with respect to warrant pursuit. The papers are far from perfect (*e.g.*, the motorcycle references are dubious), but it would be hard to expect much deterrence from suppression where police stopped, waited hours to secure a warrant from a state circuit judge, and ostensibly attempted to do all the Constitution requires vis-a-vis the warrant clause.

Therefore, in the event that the District Judge invalidates the warrant, the Court finds that the officers reasonably relied on the document to search for and seize evidence from Taylor's property. Because the search falls under the *Leon* good faith exception, suppression would not apply.

D. General Search/Blanket Suppression

As an alternative ground for suppression, Defendant argues that the officers' exceeded the search warrant's scope, thereby transforming a legal search into an impermissible general search. Under the circumstances of this case, this argument lacks merit and runs counter to prevailing Sixth Circuit precedent.

A valid warrant-based search can turn into an invalid general search if the executing officers "'flagrant[ly] disregard . . . the limitations of [the] search warrant.'" *See United States v. Garcia*, 496 F.3d 495, 507 (6th Cir. 2007) (quoting *United States v. Lambert*, 771 F.2d 83, 93 (6th Cir. 1985)). However, the Sixth Circuit has found "that an officer flagrantly disregards the limitations of a warrant only where he 'exceed[s] the scope of the warrant in the places searched' (rather than the items seized)." *See id.* (citing *Waller v. Georgia*, 104 S. Ct. 2210, 2214, n.3 (1984)) (original emphasis eliminated). Thus, the Sixth Circuit only permits blanket suppression – "the broad remedy" for such flagrant disregard – when executing officers search places not permitted by a search warrant. *See id.* Simply seizing items found in plain view but not listed or described in the search warrant does not justify blanket suppression. *See id.* (noting that such a seizure does not amount to an assault on privacy); *see also Horton v. California*, 110 S. Ct. 2301, 2307-08 (1990) (articulating the four-factored plain view analysis).

15

Here, the officers did not conduct the proscribed "general" search. As noted previously, the scope of the warrant covered both Taylor's residence and the outbuildings. The warrant also authorized search and seizure of any stolen ATVs and any instruments used to facilitate theft of an ATV. Additionally, the officers seized contraband, to include firearms and drug-related items, without impermissibly exceeding the warrant's limitations. Thus, the officers properly seized evidence found in and around the residence and the outbuildings. Even though the officers did not seize the various ATV and/or motorcycle parts strewn about the property, the search remains valid.

Moreover, the facts in this case readily correspond with those articulated in *Garcia*. *See Garcia*, 496 F.3d at 507-08 (discussing the search warrant). To reiterate, the officers seized firearms and evidence of alleged drug activity from Taylor's residence and outbuilding, both physical areas within the warrant's scope. Any remaining argument supporting a general search rests on what police did or did not seize. Therefore, even if the Court determined that the officer improperly seized evidence not specified in the warrant, blanket suppression would not be a proper remedy. In short, no general search occurred, and Taylor is not entitled to the relief sought.

Finally, the Court notes that the officers' change in focus was rational. Once the police confirmed possible methamphetamine manufacturing, the priorities readjusted on the scene. This logically explains the disconnect between the items seized and the warrant. *See* Tr. at 49; *id*. at 72.

### III. Recommendation

For these reasons, the Court **RECOMMENDS** that the District Court **DENY** Taylor's motion to suppress in its entirety.[7]

---

[7] A valid warrant here, as to items as small as ATV keys, would permit authorities to access the places the search here yielded contraband in plain view. The defense logically conceded the point, but objected to the predicate. *See* Tr. at 10.

The Court directs the parties to Federal Rule of Criminal Procedure 59(b) concerning appeal rights and mechanics. **However, because of the imminent trial date, the Court shortens any objection period to five (5) days, subject to modification by the District Judge.**

This the 26th day of July, 2010.

Signed By:
*Robert E. Wier* REW
United States Magistrate Judge